Argument of the next motion to be argued this morning. In Re. Kirkland Lake Gold et al. 241030. Counsel. Good morning, Your Honors. Daniel Wolfter on behalf of the Plaintiff Petitioner. May it please the Court, this case presents a critical opportunity to clarify the proper application of Goldman For's Searching Price Impact Framework in securities fraud class actions. First, to start with the obvious point, that framework itself was the recent product of three separate Rule 23F appeals before this Court and even interlocutory review before the U.S. Supreme Court. And in announcing the framework, everyone on the Goldman For panel recognized that additional guidance would be required in future cases like this one, given the exceedingly difficult task of conducting this sensitive inquiry. Second, the District Court's decision to deny class certification rests on a concerning misapplication of Goldman For. The District Court applied its Searching Price Impact analysis to very specific front-end statements that are nothing like the generic platitudes contemplated by the Goldman cases, and it resolved factual disputes about the falsity of those statements at the class certification stage. In so doing, the District Court undermined the careful balance struck by the Supreme Court between protecting investors and avoiding meritless class actions. Third, in Goldman, the Court instructed judges to use a good dose of common sense in analyzing the case. So there's a summary judgment motion pending, is that correct? That's correct, Your Honor. All right. So if you lose at summary judgment, what happens? If we lose summary judgment, what happens? Yes. What's the next step after summary judgment? The next step, if we lose at summary judgment, well, I should take a step back and say we will probably not be proceeding to summary judgment if the Rule 23-F is denied. Why's that? Because if we were to overcome summary judgment, we can't economically feasibly proceed in the posture on a $139 claim through trial to try to gain a judgment in his favor and then appeal from that judgment. So I suppose to answer Your Honor's question, if you were concerned about, you know, whether we could appeal from a loss at the summary judgment stage, we think that that is not the proper inquiry. That sounds like a death knell inquiry. So explain this to me. Take me through why it's impossible if you lose to proceed or why actually you're saying it's never really going to get to that stage. So I think that the court in Sumitomo did not say that the death knell doctrine only applies when it's impossible. It applies when it's practically infeasible, and that is a death knell. And pretty much I think that this court accepts that in all securities class actions. That was my word. So practically infeasible. Practically infeasible. Is there any way that the issue that you have flagged, that is the application of the search and inquiry in a case like this, could be reached in any other way than by granting your motion? I think likely no, Your Honor, and that is the precise reason. Why do you say that? Tell us why. For the same reason. If this court were to deny Rule 23F petitions asking this question all the way in case after case and leave it to the district courts, those cases will either be dismissed by the plaintiffs at that point or settled by the defendants. Can I stop you right there? What about this case? You have a fully brief summary judgment motion that you're saying you would withdraw if you lose this motion? I would say that the other reason that we shouldn't be forced to go through a summary judgment motion. Can you answer my question? Are you representing that you would withdraw your summary judgment motion on economics if you lose this motion? I have spoken with a co-counsel, and I can represent to the court that I think the inquiry is if we were to succeed at summary judgment, we would have to withdraw the case. We can't proceed forward even if we are to succeed at summary judgment because it's just economically infeasible to do for a $139 claim. But given that it's fully briefed, then it's just a matter of time until the district court rules on it. At that point, you can make a decision, and if you lose, you can appeal that and this together on the merits. Or if you win, then you can make a decision about the economics of proceeding and how to cash in, I guess. Two answers, Your Honor. At a recent status conference on summary judgment that was called by the district court, the district judge asked, why is this case still here? And everyone agreed to stay the summary judgment motion until this court resolved the Rule 23-F petition. But if this court is inclined to wait to see what happens at summary judgment, we would at the very least ask that it just hold the Rule 23-F in abeyance. And then if, you know, summary judgment is granted to the defendants, we could consider appealing from a final judgment then. And if it isn't denied and we could move forward, then the court could grant the Rule 23-F. How long has the motion been pending? How long has the motion been pending? Since last year, Your Honor. Since last year, Your Honor? Since last year? Last year is a long time. Wait. March last year, Your Honor. Is that being stayed pending this appeal? Yes. Everyone agreed to stay summary judgment. You would have to unfreeze those proceedings, right? I mean, we can't both be waiting on each other. That's correct. Yes. But, you know, I think the more fundamental point, if I may take a few more seconds, is that that is not the purpose of Rule 23-F. That is not what Sumitomo says are the criteria for ruling on Rule 23-F. And, you know, the district court's analysis ignored the actual way in which defendants' detailed front-end statements were made and understood by the market, which is exactly why analysts expressed surprise by the acquisition, downgraded their premium valuations. It's exactly why investors flooded Kirkland with e-mails expressing dismay at being blindsided by the deal. And it is exactly why the stock price plummeted by nearly 20 percent immediately after the announcement. It's hard for me to see, and this is really to your point, how the clarification of the Goldman application in various permutations can occur unless there's an early appeal. I think that's exactly right. I'm now talking just about the landscape of the law and the ability to settle questions that are open, that were raised by the original Goldman case. I think that's exactly right, Your Honor. It really has less to do with the parties, frankly. The parties are fine, you know, happy to have parties. But it's really a question of how this area of the law for which I believe the Second Circuit is supposed to have some preeminence can be addressed if it can't be addressed this way. I think that's exactly right, Your Honor. And as Sumitomo, as you well know, says, that that's a primary purpose. And in other class action cases like this, the court recognizes that Rule 23-F is really the only time this court can speak to these kinds of class certification issues in reality. They just do not reach this court after final judgment. So we're in a – just in answer to some questions from Judge Park. So practically speaking, we have – you want us to hold it in abeyance. But there is a summary judgment motion that itself is being held in abeyance. That's correct. I learned that that's called a gastinet, actually, yesterday. And so what would you have us do? So you want us to hold this in abeyance. No, Your Honor. I want to make very clear that we do not think you should hold this in abeyance. We think the proper course, to Judge Walker's point, is to grant the 23-F petition now.  Short of that. Short of that. Yes. Short of that, if this court is otherwise inclined to deny the petition, we think the better course is to hold it in abeyance and see what happens in summary judgment. And then we can make the decision from there whether it is worth trying to take an appeal from, you know, on the contingency that we lose the summary judgment motion. So imagine you're talking to a mechanic. So you want us to hold it in abeyance for how long? Take me through the mechanics of that. Do we hold it in abeyance pending some lifting of the stay at the district court level? And when does that happen since things have been pending since March of last year? Yes, we would. I think we would say hold it in abeyance, allow us as the parties to go back to the district court, have it resolve the summary judgment motion, and then perhaps we can provide a status update to this court 30 days later on whether or not we intend to take an appeal. But, you know, if there were ever a case where 23-F were required, the one where Goldman Ford called for such review seems to be the correct one. On the same issue that they said would require further guidance going forward, both the dissent and the concurrence in the judgment thought that. I appreciate that. Just plan B and plan C. Okay. Thank you very much. We'll hear from your friend on the other side. Thank you.  Thank you. Good morning. May it please the court, Audra Soloway from Paul Weiss for the respondents here. Let me start where the court began, which is the question of where we find ourselves at this moment. I just want to be very clear. We did have a conference in front of Judge Etkin. He, at the conference, learned that the 23-F had been filed, and I just want to be very clear. The plaintiffs did not say at that conference that they would drop their case if Rule 23-F is denied. So I just wanted to be very clear. They have not committed anywhere to the idea that they will not pursue their claim if Rule 23-F is denied. And also to be clear about the defendant's position at that conference, Judge Etkin is only holding the summary judgment motion until the outcome of the 23-F decision, not the entirety of an appeal process.  That's what we understood. And the defendants were very clear that we didn't want any agreement on a stay at the district court to be held to their prejudice in the Second Circuit on the question of whether 23-F should be granted. I do not believe that denying 23-F here would be the death knell of this litigation. The work here is largely done. We've completed fact discovery. We've completed expert discovery. Summary judgment is fully briefed. Defendants believe we're going to prevail on summary judgment, which means we will be back before this court shortly should the plaintiffs decide to appeal at final judgment. And the fact that the plaintiff here lost $139 shouldn't be held against the defendants here. The plaintiff, having lost only $139, has pursued this case for four years with his counsel, who have argued vigorously on his behalf for four years, and having put all of the work in to complete all of the discovery and brief summary judgment, and not having had to commit. They weren't arguing for $139. I'm sorry, Your Honor? They weren't making these arguments in order to get $139. And they wouldn't be at the appellate stage either, Your Honor. And I think that's the point here. They've obviously invested substantially in the case, and they've worked diligently since day one on it. So I think there's no reason to think that this case will actually be over. The real question here is what happens to the Goldman standard, in my view, in cases like this where you're dealing with inflationary maintenance. And you have different inputs and outputs in terms of the market value. Right. Look, I think, Your Honor, the standard under Sumitomo for granting 23-F is either that there is a compelling need for immediate resolution of a question, a legal question, or a substantial showing that the district court order is questionable and would serve as the death knell of the litigation. And I think here, each of the three questions that the petitioner has raised is really – they take issue with the district court's application of the law to the facts. They're not raising an issue of law that actually hasn't been decided by either the Supreme Court or the Second Circuit. I'd be happy to go there. I mean, the compelling need is framed in terms of this actual litigation. But my only real question is how are these questions – the questions that pervade this kind of case, which is interpreting – applying the Goldman searching standard to different fact scenarios, ever going to be – ever going to result in guidance to the district courts? Are we going to end up with district courts reaching different conclusions on similar facts, it seems to me, without some guidance? Well, Your Honor, I think this case I believe – Is that a basis – can that not be a basis for a compelling need? Or maybe I'm – you know, maybe it's kind of a mismatch there. I don't know. I mean, I think you get into a blurry line there, Your Honor, because this case I believe is the first substantial discussion of Goldman following the Second Circuit's decision. It is. There will be other cases that will come down. We already are starting to see them that will need to interpret Goldman. And I think the question is does this case present – Unless somehow there's – it's addressed at the certification stage. I don't know. And I think the answer to that, Your Honor, is that there will be issues that are going to come up, legal issues that this court needs to resolve about the application of Goldman to class actions in the securities fraud space. But obviously this court isn't going to take every case that attacks the application of Goldman. The idea is why not take the first case and then establish a framework that's clear, that is understood by all the district courts and by the litigants. And thereafter, as these cases that you've alluded to come up, there will be no fundamental question about the basic legal framework, at least within the context of the Second Circuit analysis. I don't think that there is a fundamental legal question that's been raised by this petition. And that's really the primary problem here. I mean, the three different questions that the plaintiffs have raised in this case are – two of them are highly idiosyncratic to specific issues that arose in this case. One has to do with plaintiff himself flip-flopping on his theory from the original pleadings to the class certification stage. The other has to do with the plaintiff having conceded that the statement could only – and this gets to the first question presented, Your Honor, about the so-called minimum standard statement. But the plaintiff in this case conceded that the back-end drop, which was the announcement of an acquisition, couldn't be a proxy for front-end inflation if that statement, that front-end statement, was interpreted as a forward-looking statement. And so it was the plaintiff's concession himself that makes that particular application of Goldman idiosyncratic to this case. Now, I think – Well, because there's a forward-looking statement. Well, what the plaintiff is now saying is that it was improper for the district court to take into account the forward-looking nature of the statement and that that somehow means that the district court decided falsity. That is not what the district court did. The district court, in order to ascertain whether the back-end drop could serve as a proxy for front-end inflation, the district court needed to examine all of the evidence about how the market understood that front-end statement. One of the aspects of that was – were words that were used forward-looking in nature. Now, of course, this court decides that issue all the time on motions to dismiss. That's well-trod legal analysis for this court and for district courts. But I think the point that I'm – the greater point here is that there is a real idiosyncrasy built into question one that's sort of unique to this case. Question three is based entirely on the idiosyncrasy of plaintiff having flip-flopped theories. And question number two, which is about this sort of like is the statement generic enough to invoke a searching inquiry, I think is based on a bit of a red herring. There is no sort of – that's not – the legal standard set out under Goldman is of a comparative nature. The Supreme Court set out in the Goldman decision this idea that if the plaintiff is using a back-end drop as a proxy for front-end decline, as a matter of logic, if there's a mismatch between those two things, the inference is undermined that the back-end drop is a proxy for front-end inflation. And here what the plaintiff is saying is, as I understand it, was the statement generic enough to trigger the rigorous analysis that the district court engaged in. But the Supreme Court has told us in Walmart, in Halliburton, in Goldman over and over again that we're always supposed to do a rigorous analysis for price impact and for any other – Let me ask you – set aside the merits for a moment. On this issue of holding it in advance, there is a little bit of an oddity because the summary judgment motion is mistaken, effectively, and Judge Etkin is waiting for us presumably. That's the genesis of the stay. What is your position exactly on holding this in advance, having you go back, having the parties go back to – I guess the term is lift the stay because we are in this position right now. Look, we – the defendants have obviously expended substantial resources in this case. We've done all the discovery. We've fully briefed summary judgment. We would like our summary judgment motion to be decided. We believe it's going to be granted. Having not heard a commitment from the plaintiffs that they will in fact drop their case if 23F is not granted, I think the only path here forward is for the district court to decide summary judgment and then for this court to have all of the issues at final judgment. Obviously, trial is a possibility if the court doesn't grant summary judgment. Of course. We don't think that's the most likely path here. Okay. Do you have any other questions? We certainly – just to add to that, Your Honor, we certainly don't think the defendants should be prejudiced by the district court's decision to temporarily hold in advance the summary judgment motion while it awaited the outcome. You go back. The idea is you go back, let us know. So we'll hold in advance while he decides. We're good with that, Your Honor. Yes. I think that that's where – I think I heard that – that's second preference. First preference is for us to actually grant the petition. I appreciate that. Okay. Thank you very much, Your Honor. Thank you very much. We'll reserve the decision.